UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION NO: |
| Plaintiff, | |
| v. | |
| OILFIELD INSTRUMENTATION, U.S.A., INC. | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), and files its Complaint and Jury Demand.  The EEOC respectfully avers as follows:

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act, as amended ("ADAAA" or "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability, and to provide appropriate relief to Carl J. Devalcourt, III, who was adversely affected by Defendant's discriminatory practices, and to prevent further occurrence of such practices.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADAAA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f) (1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Louisiana.

## PARTIES

3.

The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.

At all relevant times, Defendant, Oilfield Instrumentation, USA ("Defendant" or "Oilfield Instrumentation"), has continuously been a corporation organized under the laws of the

State of Louisiana, doing business within the State of Louisiana, and has continuously had at least 15 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADAAA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6.

At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.

At least since February 4, 2013, Defendant has engaged in conduct in Lafayette, Louisiana which violates the ADA.

8.

More than thirty (30) days before the institution of this lawsuit, Carl Devalcourt filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant.

9.

On July 8, 2015, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the

Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.

The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.

The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.

On June 14, 2016, the Commission issued to Defendant a Notice of Failure of Conciliation.

13.

All conditions precedent to the initiation of this lawsuit have been fulfilled.

14.

Carl Devalcourt has at all times relevant been a "qualified individual" with a "disability" within the meaning of the ADA.

15.

Carl Devalcourt had type I insulin-dependent diabetes when he applied for employment with Oilfield Instrumentation.

16.

On February 4, 2013, Carl Devalcourt applied to work for Oilfield Instrumentation as a service technician.

17.

On February 6, 2013, Carl Devalcourt interviewed with Tom Walker ("Walker"), the hiring manager for Oilfield Instrumentation.

18.

On behalf of Defendant, Walker offered Carl Devalcourt a service technician position.

19.

Walker informed Mr. Devalcourt that if he wished to accept the job, he would have to undergo a physical examination and drug screening.

20.

On February 7, 2013, Mr. Devalcourt went to the Acadian Health Services Clinic ("AHS") for his physical examination.

21.

Franscisco Silva ("Dr. Silva") examined Carl Devalcourt and determined that Mr. Devalcourt was "in good physical shape" and that his diabetes was "well controlled."

22.

Dr. Silva informed Carl Devalcourt that he was concerned about the fact that he was a type 1 insulin-dependent diabetic wanting to work offshore.

23.

Carl Devalcourt told Dr. Silva that he was using an insulin pump, that he had two years of previous experience working offshore as a diabetic without incident, and that he routinely took necessary precautions to ensure his safety.

24.

Carl Devalcourt had worked offshore in the past for extended periods without any incidents or problems stemming from his condition or the treatment thereof.

25.

At the end of the exam with Dr. Silva, Carl Devalcourt waited in the lobby for approximately ten minutes. The receptionist informed him that there was a problem and asked that he continue to wait.

26.

After a few minutes, the receptionist called Carl Devalcourt back into the office. Dr. Silva informed him that because the technician job required him to work offshore, he had called

Defendant to advise it that Carl Devalcourt was an insulin-dependent diabetic.

27.

Dr. Silva informed Carl Devalcourt that Defendant did not want to continue the employment process.

28.

Carl Devalcourt called Walker to ask if it was true that Defendant was rescinding his offer of employment. Walker said yes.

29.

Walker also told Carl Devalcourt that because he was an insulin-dependent diabetic, Defendant could not guarantee that there would be a medic onboard every facility and that if Carl Devalcourt needed medical attention it might not be available. Walker told Carl Devalcourt that he, Walker, could not take that risk.

30.

Carl Devalcourt made several attempts to contact Walker and requested an appointment to talk to him in person. The attempts were unsuccessful and he was unable to speak to Walker or any other managers.

31.

In a letter dated February 3, 2014, addressed to Defendant, Dr. Silva stated that Carl Devalcourt was in good physical shape and had type I insulin-dependent diabetes. He also noted

that Carl Devalcourt uses an insulin pump to control his blood sugar. Dr. Silva also stated in the letter:

> Because Type I diabetics are so fragile and insulin can be affected by so many things (food, heat, exercise, stress) it is very difficult to guarantee [Mr. Devalcourt's] safety. Due to weather delays it could take days to get a sick patient off the rigs and a diabetic that is out of insulin and in a coma could die before they are able to get him off the platform. Having a paramedic that can monitor his glucose and provide support is essential to his safety.

32.

Dr. Silva further stated to Defendant that "there was no medic on his rig and for his own safety it was felt that he was not qualified for the position applied for."

33.

Carl Devalcourt is a qualified individual under the ADA. At all times relevant, he was able to perform the essential functions of the offshore technician position, with or without accommodation. Defendant was aware that Carl Devalcourt had performed substantially similar work in the past without need of an accommodation and without incident.

34.

Dr. Silva did not engage in an individualized assessment of whether Carl Devalcourt could perform the essential functions of the technician position, with or without accommodation.

35.

Dr. Silva stated that an essential function of the job was to work offshore on rigs where paramedics are not always present and determined that Carl Devalcourt was not qualified to

do so, despite having acknowledged that Carl Devalcourt was in good health.

36.

Defendant did not conduct an individualized assessment to determine whether Carl Devalcourt could perform the essential functions of the job with or without accommodation, nor whether accommodations were possible if needed.

37.

Defendant unlawfully rescinded Carl Devalcourt's job offer because of his "disability," within the meaning of the ADA. Dr. Silva described Carl Devalcourt as "fragile" and informed Defendant that he was not qualified for the position because he is a diabetic. Defendant refused to employ Carl Devalcourt because of his known physical impairment.

38.

Defendant unlawfully rescinded Carl Devalcourt's job offer on the basis of Defendant's blanket determination — based on stereotypes, myths, and preconceptions, and not based on objective medical evidence — that no type I diabetic could work offshore.

39.

Defendant unlawfully discriminated against Carl Devalcourt on the basis of a disability.

40.

The unlawful employment practices complained of herein were, and continue to be, committed with malice or reckless indifference to Carl Devalcourt's federally protected rights.

41.

The unlawful employment practices complained of herein were intentional.

42.

The unlawful employment practices complained of herein have caused Carl Devalcourt to suffer economic injuries, including lost wages and nonpecuniary losses.

**PRAYER FOR RELIEF**

<u>Wherefore, the Commission respectfully requests that this Court:</u>

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from unlawfully rescinding job offers on the basis of a disability within the meaning of the ADAAA, and from any other employment practice which discriminates on the basis of a disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices, including but not limited to training of personnel and reporting to the Commission concerning compliance with the ADA;

C. Order Defendant to make Mr. Devalcourt whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D. Order Defendant to make Mr. Devalcourt whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of

above, including but not limited to emotional and mental anguish, pain and suffering, humiliation, loss of enjoyment of life, and devastation in amounts to be determined at trial, and by providing compensation for past and future pecuniary losses resulting from Defendant's unlawful practices;

E. Order Defendant to pay Mr. Devalcourt punitive damages for its malicious and reckless conduct, as described hereinabove, in amounts to be determined at trial;

F. Grant such further legal or equitable relief as the Court deems necessary and proper in the public interest; and

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, the Commission hereby requests a jury on all issues raised in the instant Complaint which may be tried by jury.

Respectfully submitted,

**P. DAVID LOPEZ**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned
**JIM SACHER**
Regional Attorney
La. Bar Roll Number 14888
U.S. Equal Employment
Opportunity Commission
Houston District Office
1919 Smith Street 7th floor,
Houston, Texas, 77002

Direct: (713) 651-4963
james.sacher@eeoc.gov

**GREGORY T. JUGE**
Supervisory Trial Attorney
LA Bar Roll No. 20890
500 Poydras Street
Suite 809
New Orleans, LA 70130
(504) 676-8239
gregory.juge@eeoc.gov


      /s/ Alexandra Navarre-Davis
**ALEXANDRA NAVARRE-DAVIS, T.A.**
Trial Attorney
LA Bar Roll No. 35000
**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
500 Poydras Street
Suite 809
New Orleans, LA 70130
Direct:(504) 595-2914
Fax: (504) 595-2886
alexandra.navarre-davis@eeoc.gov

**COUNSEL FOR PLAINTIFF,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

**REGISTERED AGENT
FOR SERVICE OF PROCESS:**

Herman Allen Stuart, Jr.
202 Amethyst
Lafayette, LA 70506

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served on Defendant's counsel via email.

July 25, 2016                                                             /s/ Alexandra Navarre-Davis
Date                                                                 **ALEXANDRA NAVARRE-DAVIS**